**In re Jack J. GRYNBERG, Celeste C. Grynberg, Debtors.**

**Jack J. GRYNBERG, Celeste C. Grynberg, Appellants,**

v.

**DANZIG CLAIMANTS, Appellees.**

No. 90–1327.

United States Court of Appeals, Tenth Circuit.

June 3, 1992.

Neil E. Ayervais of Lohf, Shaiman & Ross, Denver, Colo. (William D. Scheid of Scheid and Horlbeck, Denver, Colo., with him on the brief), for appellants.

James C. Ruh of Jensen, Byrne, Parsons, Ruh & Tilton, Denver, Colo. (Sandra J. Shapiro and Forrest E. Fang of Bancroft, Avery & McAlister, San Francisco, Cal., with him on the brief), for appellees.

Before SEYMOUR, ANDERSON, Circuit Judges, and BRATTON, District Judge.[*]

STEPHEN H. ANDERSON, Circuit Judge.

This case requires us to decide whether appellees can recover costs incurred in defending the appeal of a state court judgment entered in appellees' favor without first obtaining relief from the automatic stay triggered by the filing of debtors' petitions in bankruptcy. Although our reasoning differs from that of the district court, we agree with that court's conclusion that the automatic stay did not bar the award of these costs, and affirm.

The facts in this case are discussed more fully in the bankruptcy court's decision. *See Danzig Claimants v. Grynberg (In re Grynberg),* 113 B.R. 709, 710–11 (Bankr. D.Colo.1990). We repeat those facts relevant to our decision here. The Danzig Claimants (Danzigs)[1] obtained a class action judgment against the Grynbergs in California Superior Court. The Grynbergs filed a notice of appeal of that judgment

---

[*] Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

1. The "Danzig Claimants" is the name given to the class action creditors of the Grynbergs in the California state court action referred to below.

with the First Appellate District of the California Court of Appeals on February 17, 1981. Three days later, the Grynbergs filed separate Chapter 11 bankruptcy petitions. In May 1981, the bankruptcy court granted the Grynbergs leave to proceed with their appeal in California.[2] That appeal was ultimately unsuccessful. The California Court of Appeals affirmed the trial court's judgment, and both the California Supreme Court and the United States Supreme Court denied certiorari.[3]

In March 1985, at the end of these appeals, the Danzigs filed with the California trial court a Memorandum of Costs for expenses incurred in the appeal, permitted to prevailing parties under Cal.Civ.Proc. Code section 1034 (West 1982).[4] In December 1989, the Danzigs moved in the bankruptcy court, which had jurisdiction over all claims asserted against the Grynbergs' bankruptcy estate, for the payment of costs reflected in the 1985 Memorandum of Costs. In opposing the motion, the Grynbergs argued that the Danzigs had failed to obtain relief from the automatic stay prior to filing the 1985 Memorandum of Costs. The bankruptcy court granted the Danzigs' motion, concluding that the 1985 appellate costs resulted from postpetition conduct of the Grynbergs rendering the automatic stay inapplicable. *In re Grynberg*, 113 B.R. at 714. The district court affirmed. Appendix to Brief of Appellants (hereafter Appendix) at 88: *Grynberg v. Danzig Claimants (In re Grynberg)*, No.

90–F–965, Order at 9 (D.Colo. Oct. 11, 1990). At issue is whether these costs were awarded in violation of the automatic stay of 11 U.S.C. § 362(a). This is a legal question which we review de novo. *Citizens Nat'l Bank & Trust v. Serelson (In re Burkart Farm & Livestock)*, 938 F.2d 1114, 1115 (10th Cir.1991).

The Grynbergs argue that the appellate costs are prepetition claims subject to the automatic stay and that, because the Danzigs did not obtain relief from the stay, any award of costs to the Danzigs is void. While it is superficially tempting to analyze this case based on whether the claim can be categorized as prepetition and thus subject to the stay, or postpetition and free from the stay, our evaluation persuades us that a different analysis is required.

The essence of the California appellate proceeding was as a proceeding "to determine the validity, priority, or extent of a lien or other interest in property" pursuant to Bankruptcy Rule 7001(2). Indeed, the complaint filed by the Grynbergs in the bankruptcy court was styled "Complaint to Determine Validity and Extent of Lien." Appendix at 114. It was this complaint which was dismissed by the bankruptcy court as it abstained in favor of the jurisdiction of the California courts. Appendix at 126: *Grynberg v. Barshop (In re Grynberg)*, No. 81 C 1487, Findings, Conclusions and Order on Motion for Dismissal and Motions for Summary Judgment at 9 (Bankr.D.Colo. Sept. 17, 1981).

---

**2.** The Danzigs argue that this order was tantamount to an order granting relief from stay with regard to all aspects of the California appeal, thus freeing them from the need to get further relief to collect costs. Because we decide this case on other grounds, it is unnecessary for us to address this argument.

**3.** During the pendency of the California appeals, in June 1981, the Grynbergs initiated an adversary proceeding in the bankruptcy court to challenge the validity of liens based on the California judgment. The bankruptcy judge abstained from hearing this complaint and dismissed the action, leaving the parties free to pursue the pending appeal in the California courts. Appendix to Brief of Appellants (hereafter Appendix) at 134: *Grynberg v. Barshop (In re Grynberg)*, No. 81 C 1487, Findings, Conclusions and Order on Motion for Dismissal and Motions for Summary Judgment at 9 (Bankr.D.Colo. Sept. 17,

1981). Contrary to the Grynbergs' assertion, this order did not force the Grynbergs to continue their California appeal. It simply decided the forum in which the proceeding would be heard.

**4.** This section states in relevant part, "[i]n appeals from the superior ... courts, costs shall be awarded as provided in rules adopted by the Judicial Council.... The party entitled to costs ... may recover all amounts actually paid out by him in connection with said appeal, and the preparation of the record for the appeal." This section was repealed in 1986 and replaced by a new § 1034 providing in relevant part, "(b) The Judicial Council shall establish by rule allowable costs on appeal and the procedure for claiming those costs." (West Supp.1991). Neither the Grynbergs nor the Danzigs contend that the repeal and replacement of § 1034 have any effect in this appeal.

■ An action to determine the validity of a lien is an adversary proceeding. Bankr.R. 7001 (1989–90). It is within the discretion of the court to award costs in an adversary proceeding. Bankruptcy Rule 7054(b) provides that "the court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Bankr.R. 7054(b); *see generally* 9 *Collier on Bankruptcy* ¶ 7054.07 (Lawrence P. King ed., 15th ed. 1992).[5] Thus the award of appellate costs by the California court was tantamount to an order of a bankruptcy court awarding costs after an action to determine the validity of a lien, all as allowed by Rule 7054(b).[6]

■ The Grynbergs also argue that the Danzigs fatally undermined their position by including payment of these costs as prepetition claims and by requesting payment from the deposit set aside to settle their claims. The characterization of the costs by one of the parties, however, is irrelevant to the legal question of whether the award of the costs violated the automatic stay.

The Danzigs request that an award of sanctions pursuant to Rule 38 of the Federal Rules of Appellate Procedure be entered against the Grynbergs. We deny the request for sanctions and AFFIRM the order of the district court.

---

**5.** The Grynbergs do not argue that the California court abused its discretion in awarding these costs or that the award was otherwise barred by statute or rule.

**6.** As an alternative, the California appeal was also in the nature of a dischargeability hearing. In April 1982, the Grynbergs' Second Modified Joint Plan of Reorganization (the Plan) was confirmed by the bankruptcy court. Appendix at 110: *In re Grynberg*, Nos. 81 B 00821, 81 B 00825, Order Confirming Plan at 2 (Bankr. D.Colo. April 21, 1982). Among other things, the Plan provided that, with respect to the Danzig claims and any other disputed claims (as defined in the Plan), the Grynbergs would "not be discharged from liability ... except by payment, settlement or final resolution ... in favor of the [Grynbergs]." Appendix at 105–06. (Jack Grynberg had previously deposited funds with the court sufficient to protect the Danzigs' interests. These funds continued on deposit pending allowance or disallowance of the claims of the Danzigs by the court.) Thus, pursuant to the Plan itself, the California appeal was tantamount to a dischargeability hearing under 11 U.S.C. § 523(c): if the Danzigs won on appeal, their claims would be paid; if they lost, their claims would be discharged. *See* 9 *Collier on Bankruptcy* ¶ 7001.09 (with certain exceptions not applicable here, state courts have concurrent jurisdiction with the bankruptcy court over question of whether debts are dischargeable under 11 U.S.C. § 523(a)).

A proceeding to determine the dischargeability of a debt, like a proceeding to determine the validity of a lien as discussed above, is an adversary proceeding after which costs may be awarded. Bankr.R. 7001; *Collier on Bankruptcy* ¶¶ 7001.01, 7001.09; Bankr.R. 7054(b).